**Affirmed and Memorandum Opinion filed November 5, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00987-CV

---

### JEANNE RANSOM, Appellant

### V.

### JEANINE EATON, D.D.S., Appellee

---

**On Appeal from the 269th District Court
Harris County, Texas
Trial Court Cause No. 2013-73342**

---

## M E M O R A N D U M   O P I N I O N

Jeanne Ransom appeals from the dismissal of her health care liability claim against appellee Dr. Jeanine Eaton, D.D.S. In a single issue, Ransom contends that an expert report she served on Dr. Eaton before filing suit satisfies the statutory requirement that the report be served "not later than the 120th day after the date each defendant's original answer is filed." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2014). We affirm the trial court's dismissal because

(1) Dr. Eaton was not a "party" pursuant to the statute when the report was sent before suit; and (2) no effort was undertaken after Ransom filed suit to serve a report in compliance with the statutory requirement.

## BACKGROUND

Ransom sought dental treatment from Dr. Eaton on July 13, 2012. Ransom alleges that she and Dr. Eaton agreed on a treatment plan calling for Dr. Eaton to extract nine teeth; according to Ransom, Dr. Eaton extracted two additional teeth contrary to Ransom's wishes.

Ransom served the required pre-suit notice of health care liability claim on Dr. Eaton by certified mail, return receipt requested, on September 1, 2013. *See id.* § 74.051(a) (Vernon 2011). Included with the pre-suit notice were an expert report outlining Dr. Eaton's negligence and the expert's *curriculum vitae*. Dr. Eaton does not dispute that she received the expert report.

Ransom sued Dr. Eaton on December 5, 2013, alleging causes of action for medical negligence and assault. The claims made in Ransom's original petition tracked the alleged breaches identified previously in the expert report, but Ransom did not serve the expert report concurrently with or at any time after filing the original petition.

Dr. Eaton filed her original answer on March 26, 2014; the deadline for Ransom to serve the expert report was July 24, 2014. *See id.* § 74.351(a). Dr. Eaton filed a motion to dismiss Ransom's medical negligence claim on July 31, 2014. *See id.* § 74.351(b). The trial court signed an order dismissing all of Ransom's claims[1] with prejudice on September 19, 2014. This appeal followed.

---

[1] The trial court dismissed all of Ransom's claims against Dr. Eaton, including the assault claim. Ransom does not complain on appeal of the dismissal of the assault claim.

STANDARD OF REVIEW

A trial court's ruling on a motion to dismiss pursuant to Texas Civil Practice and Remedies Code section 74.351 is reviewed for an abuse of discretion. *See TTHR Ltd. P'ship v. Moreno*, 401 S.W.3d 41, 44 (Tex. 2013). A trial court abuses its discretion if it acts in an unreasonable and arbitrary manner or without reference to any guiding principles. *Estate of Regis ex rel. McWashington v. Harris Cty. Hosp. Dist.*, 208 S.W.3d 64, 67 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

Determinations regarding the meaning of section 74.351 are legal questions and are reviewed *de novo*. *See Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011).

## ANALYSIS

Section 74.351(a) of the Texas Civil Practice and Remedies Code states:

> In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the later of the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed, failing which all objections are waived.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).

Ransom contends that pre-suit service of the expert report satisfied section 74.351(a) because the statute does not prohibit pre-suit service; rather, she contends pre-suit service of the report comports with a deadline requiring service

"not later than the 120th day after the date each defendant's original answer is filed." *See id.*

The statute requires that the expert report be served on "a party or the party's attorney." *See id.* This requirement previously has been examined by the Supreme Court of Texas. *See Zanchi v. Lane*, 408 S.W.3d 373 (Tex. 2013).

In *Zanchi*, the plaintiff served an expert report on a doctor-defendant after suit was filed but before serving the doctor with process. *Zanchi*, 408 S.W.3d at 376. The Supreme Court of Texas considered "whether a claimant asserting a health care liability claim . . . complies with section 74.351(a)'s mandate to serve an expert report on a 'party' by serving the report on a defendant who has not yet been served with process." *Id.* at 375. *Zanchi* concluded that "in the context of the [Texas Medical Liability Act], the term 'party' means one named in a lawsuit and that service of the expert report on Zanchi before he was served with process satisfied the [Texas Medical Liability Act]'s expert-report requirement." *Id.* at 377.

*Zanchi* did not resolve whether an expert report filed before suit satisfies the statute's expert-report requirement. *See generally id.* at 375-81. However, the court suggested that pre-suit service is not effective when it concluded that the term "party" under section 74.351(a) "means one named in a lawsuit." *See id.* at 377.

We find instructive the analysis in *Bexar County Hospital v. Harlan*, No. 04-15-00155-CV, 2015 WL 4638262 (Tex. App.—San Antonio Aug. 5, 2015, no pet. h.) (mem. op.). In *Bexar County Hospital*, the plaintiff sent an expert report before suit was filed and a second copy of the same report after the defendants filed their answer. *Id.* at *1. Although service of the second report was sufficient, the court

4

concluded that pre-suit service of the expert report was insufficient by itself to satisfy the statutory requirement:

> With regard to the expert report provided to Mr. Boughal, we first note that this expert report was provided before Harlan filed his lawsuit and, therefore, before any physician or health care provider was a party/defendant. As previously noted, section 74.351(a) requires service on a "party or the party's attorney," and the Texas Supreme Court has held the term "party" as used in section 74.351(a) means "one named in a lawsuit." *Zanchi*, 408 S.W.3d at 375. Accordingly, service on a physician or health care provider before a lawsuit has been filed or at any other time when the physician or health care provider is not a "party" does not satisfy section 74.351(a).

*Id.* at *2; *see also Christus Santa Rosa Health Care Corp. v. Botello*, 424 S.W.3d 117, 125 (Tex. App.—San Antonio 2013, pet. denied) (pre-suit service of an expert report was insufficient); *Offenbach v. Stockton*, 285 S.W.3d 517, 522-23 (Tex. App.—Dallas 2009) ("[P]re-suit service on a potential party does not satisfy the statutory service requirement."), *aff'd on other grounds*, 336 S.W.3d 610 (Tex. 2011).

*Poland v. Ott*, 278 S.W.3d 39 (Tex. App.—Houston [1st Dist.] 2008, pet. denied), also provides guidance. *Poland* concluded that pre-suit service of an expert report did not satisfy section 74.351(a) for several reasons: (1) Chapter 74 uses the term "party" (as later discussed in *Zanchi*); (2) pre-suit service of an expert report might require an objection to the report to be filed before a lawsuit existed; (3) "rule 21a, which . . . section 74.351(a) implicitly incorporates through the use of the term 'serve,' generally concerns postsuit notice"; (4) the possibility that a potential party may not become an actual party; and (5) the purposes behind

5

section 74.351(a).[2]  *See id.* at 47-51.  The court's analysis of the fourth and fifth issues particularly is relevant.

Regarding the fourth reason, the court explained:

[A] physician or health-care provider may not know the details of the allegations against him—or even be assured that he or it will be sued—until the filing of a petition asserting a health-care-liability claim.  Chapter 74 requires that the claimant give presuit notice of his health-care-liability claim before the filing of a court claim, but the purpose of the notice provision is simply "to encourage pre-suit negotiations so as to avoid excessive cost of litigation."  *Schepps v. Presbyterian Hosp. of Dallas*, 652 S.W.2d 934, 938 (Tex.1983); *accord Phillips v. Sharpstown Gen. Hosp.*, 664 S.W.2d 162, 168 (Tex. App.—Houston [1st Dist.] 1983, no writ) (indicating that purpose of predecessor to section 74.051(a) is "to facilitate discussion of the merits of a potential health care claim and thereby initiate amicable settlement negotiations").  If a court claim is later filed, the petition's allegations could, theoretically, differ somewhat from whatever the presuit notice stated.  Furthermore, chapter 74 does not require that every person or entity who is given presuit notice actually be sued. *See Thompson v. Community Health Inv. Corp.*, 923 S.W.2d 569, 572 (Tex.1996) (providing that predecessor to section 74.051(a) does not require "that all those receiving presuit notice be joined in any subsequent suit").

*Id.* at 50.

Regarding the fifth reason, the court explained that "the purposes behind former section 74.351(a)'s adoption were, among other things, to remove unwarranted delay and expense, to accelerate the disposition of non-meritorious

---

[2] Ransom's claims are governed by the version of section 74.351(a) that became effective on September 1, 2013.  *Poland* considered a prior version of section 74.351(a).  *See Poland*, 278 S.W.3d at 45.  As a result, the second reason given — that allowing pre-suit service of reports might require that objections to the report be made before a lawsuit is filed — no longer applies because the deadline for a defendant to object is now "not later than the later of the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed."  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a).

cases, and *to give hard-and-fast deadlines for the serving of expert reports*." *Id.* at 50-51 (emphasis in original) (quoting *Intracare Hosp. N. v. Campbell*, 222 S.W.3d 790, 797 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). The court further elaborated:

> Section 74.351(a)'s expert-report deadline is hard-and-fast only if it is triggered by the filing of a health-care-liability claim against the physician or health-care provider in court. Allowing the provision of an expert report that occurs before a court claim is filed to suffice for section 74.351(a) service potentially allows for ambiguity and confusion, rather than promoting certainty.
>
> For example, there is no guarantee that whatever report may be provided during presuit negotiations will be the report on which the claimant relies to satisfy section 74.351(a). If the Poland parties' interpretation of former section 74.351(a) were correct, then a physician or health-care provider who receives an expert report from the claimant before a claim is filed against him or it will have to guess whether the document is intended to satisfy chapter 74 or instead intended simply to be a negotiation tool. And this raises a related question (although not in this case): what if a document from a medical expert that is provided during the presuit negotiation period is patently insufficient, not containing all of the basic criteria that would make it a valid section 74.351(a) report? If the Poland parties' interpretation is correct, then must a physician or health-care provider assume that the document is an attempted (albeit deficient) section 74.351(a) report and object to its deficiencies, for fear of waiving any objections, or should the potential defendant instead assume that the document is not intended to be a report, with a true report to follow if that potential defendant is eventually sued?
>
> The potential ambiguity that could arise from these predicaments is obvious and does not comport with the purposes of former section 74.351(a). Because the Poland parties' interpretation would contravene the Legislature's intent in adopting former section 74.351(a), we do not deem the Legislature to have intended it.

*Id.* at 51 (footnote omitted).

7

A distinct issue presently is pending in *Reddy v. Hebner*, 435 S.W.3d 323 (Tex. App.—Austin 2014, pet. granted).[3] That issue involves the efficacy of a pre-suit report when the plaintiffs subsequently attempted to serve a report after suit was filed, but attached the wrong report. *See id.* at 326-31. The majority held that the plaintiffs did not timely serve an expert report. *Id.* at 331. The majority reasoned, in part, that "[g]iven the supreme court's directive regarding when an expert report may properly be served, we cannot conclude that the expert report mailed with . . . pre-suit notice letters satisfied the relevant statutory requirements." *Id.* at 329. Justice Pemberton dissented, contending that the plaintiffs should have an opportunity to cure the error of serving the wrong report after suit was filed — an argument founded, in part, on the plaintiffs' pre-suit service of the proper report. *Id.* at 337-42 (Pemberton, J., dissenting). Justice Pemberton stated that he "[would] not quarrel with the proposition that pre-suit service of an expert report on a future defendant, *in itself*, would not discharge a claimant's obligation under the MLA to serve an expert report on 'that party or the party's attorney,' . . . ." *Id.* at 337 (Pemberton, J., dissenting) (emphasis in original).

Here, Ransom served an expert report on Dr. Eaton before suit was filed. Ransom did not serve an expert report of any kind — deficient, mistaken, or otherwise — on Dr. Eaton with the original petition or at any time thereafter. Because no lawsuit was pending, Dr. Eaton was not a "party" at the time the expert report was served on her as required by section 74.351. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351; *Zanchi*, 408 S.W.3d at 377-79. Based on the specific facts of this case — where the only service of the expert report was pre-suit — and the supreme court's precedent in *Zanchi*, we overrule Ransom's sole issue and affirm the trial court's dismissal. *See Zanchi*, 408 S.W.3d at 377-81; *see also*

---

[3] The Texas Supreme Court heard argument in *Reddy* on October 12, 2015.

*Bexar Cty. Hosp.*, 2015 WL 4638262, at *2; *Christus Santa Rosa Health Care Corp.*, 424 S.W.3d at 125; *Offenbach*, 285 S.W.3d at 522-23; *Poland*, 278 S.W.3d at 47-51. We note that the result here comports with the analysis of the *Reddy* majority and Justice Pemberton's dissent, as both acknowledge that dismissal would have been required based solely on a pre-suit report with no subsequent effort to serve a report after suit was filed. *See Reddy*, 435 S.W.3d at 329; *id.* at 337 (Pemberton, J., dissenting).

## CONCLUSION

Having overruled Ransom's sole issue on appeal, we affirm the trial court's judgment.


/s/     William J. Boyce
        Justice



Panel consists of Justices Boyce, McCally, and Donovan.